the honorable the judges of the United States Court of Appeals for the Fourth Circuit. Please be seated. We're happy to hear argument in a referred case United States v. Anderson. Good morning your honors. May it please the court I'm Kimberly Albro here on behalf of the appellant Rick Anderson. The key issue in this case is whether the plea agreement was fundamentally fair when it was secured and based on the explicit terms of the written agreement. In other words the argument that was made is whether a good faith and fair dealing was breached in this case. Mr. Anderson submits that the agreement was not fair or fully voluntarily involuntary in knowing because the government was aware of certain information that would significantly increase his guideline range when it negotiated the plea agreement but it didn't disclose that information. So I'm sorry to be clear you're not arguing that there was a breach of the plea agreement. It's a no it's a it's a breach of the implied covenant of good faith and fair dealing. I thought that's about the execution of an agreement. That actually it doesn't apply before there's an actual contract good faith and fair dealing. One of the best ways that I read it it can be shown when there's the government acts in a way designed to reappropriate what one party bargained for or it can be something that's done I think in my reply brief is where I covered where it can't be used to deprive the party of what what they believe would happen. It can't be used to end around what the not about performance of the contract but more about formation of the contract. There are places in in my writings that I did read it to be that. I don't think the covenant of good faith and fair dealing can apply to the actual formation of the contract. Why not? That's just what I what I read in the case law that I read there was a specific case that I don't think I cited in my this argument. I'm not sure that it fully applies before the contract exists. Perhaps the dealings I guess the way to look at it is how the dealings was what the dealings of beforehand how they result in the written product that would be a breach of the implied covenant of good faith. So does the government commit fraud here? Is that your argument? I wouldn't go as far as to say fraud. I wouldn't use the term fraud. I think it's more of the contractual term of what did they negotiate with Mr. Anderson? What did Mr. Anderson believe he would get out of the agreement and were his beliefs met? Well lots you know that I mean this happens all the time in a contract whether it's in the civil context or or here that there may be expectations that people have but you look at the terms of the contract and you're guided by the four corners of the contract, the plea agreement that the government breached. I believe that and again it's it's not an explicit term and this implied covenant of good faith and fair dealing can deal with when the spirit of the contract is evaded and the government in this case knew that that they had two informants that they had conducted interviews with prior to entering into the plea agreement with being once converted to the marijuana way in essence about 48 times what was pled in the indictment and when the contract was executed as most of the government plea agreement state they refer to relevant conduct and they referred specifically to the other drug weights in the counts that would be dismissed. So I believe the fact that they specifically talked about relevant conduct in the contract that they knew that there was other relevant conduct that they didn't meet that is evading the spirit of the contract. That's why it's a it's a breach of the covenant of good faith and fair dealing. Do you have a case that's ever taken this tact before? I don't have a case that deals with this specifically the drug weight. In my reply brief I believe it was a Sixth Circuit case that I referenced. It might be the Strickland case. No I'm sorry that's wrong. If you'll just give me one moment. On pages I would say four, five, and six of my reply brief I refer to several cases. There's the Krusko case out of the analogous case but the court felt that the contract with the plea agreement was breached because the party bargained for a specific sentence of seven years and the court imposed a certain sentence of imprisonment and then special parole on top of that which went above the seven years. But that would be a breach of a clear on whether it meant term of imprisonment and parole or just the term of imprisonment and because the defendant presented information that he understood it to be a seven-year total sentence including I guess what would be equivalent to supervised release now the special parole the court agreed that it had been breached. I apologize I'm sure I had that there's a again as you mentioned civil cases they have a lot of the breach of covenant and fair dealing more than criminal cases do and I cited several cases the Cordry case which is when there's not an explicit term breached but where the spirit of the contract has been breached. So at what point in time in your view did the government breach the plea agreement or breach the spirit of I forgot the language you just used but at what moment did the government do something wrong in your view? I believe when they agreed with the pre-senate's report which included this inflated drug weight and at the time of the sentencing hearing. So you think it was at the hearing they should have done what argued for a sentence that would have been consistent with the drug weights associated only with the information in the indictment? Correct. So they were obliged to argue for that sentence at sentencing isn't isn't that kind of an obligation usually reflected in a plea agreement as in you know we have agreed to recommend the following sentence or we have agreed what the relevant conduct will look like? That is true and there are cases where there is an explicit term that has been violated that it's easier to show that that the explicit term was violated that's why this is somewhat of a unique argument in that it's it's the covenant of good faith and fair dealing but that does apply to plea agreements and that. And so you think it was sort of an implied term of this agreement that look that this is the drug weight? That's correct and and it's this the language in Santabella which is the Supreme Court case that's relevant to you know the kind of dealings and coming up with these plea agreements it uses the term it presupposes fairness between the prosecutor and the defendant when you're looking at this when when the government is in possession of information that would put 48 times the drug weight on a defendant when the indictment you know gives a certain amount that's you know 1 48th of that amount that it is clear that that's not that can't be fair to the defendant who's unaware of this information. Isn't it the defense counsel's obligation to on behalf of their client to make inquiries about well what's relevant conduct going to be because you see lots of plea agreements that have a range for drug weight or a methodology to determine drug weight or an agreement that they're only going to consider certain factors in setting that or setting a limit or setting a specific sentencing range based on that all of which the government could breach if they wanted to but it seems like to me that that that's one of defense counsel's obligation and representing their client is to negotiate those terms or at least make inquiry of them as part of the negotiation of the plea agreement. I completely agree with your honor. My office in fact the federal defender in my district said that very thing when we were discussing this case how that would have been the better practice this this was not my case below it would be better to try to stipulate a drug weight if especially if you're aware of the fact that there may be some other drug weights out there. Mr. Anderson however was not represented in that manner and as soon as his attorney came to him with these additional drug weights which was after he executed the plea agreement he complained about the plea agreement. The agreement does have a clause that talks about relevant conduct and it talks it says the defendant understands the court may consider these dismissed counts as relevant conduct. It doesn't say it so that there's sort of a maybe you have an argument that that's all of the relevant conduct some relevant conduct is specifically talked about in the plea agreement this enormous amount of other relevant conduct is not. Well that that's our position your honor the fact that the government did mention the relevant conduct did know about other relevant conduct at the time and didn't inform Mr. Anderson and that's the whole basis for the breach of the implied covenant of good faith and fair dealing from his The chair, oh I was just there is an ineffective assistance claim in this case right? That's correct and and while I understand that it usually needs to be really conclusive from the record I have clients often that don't want to raise that issue this is one of the only cases where I thought that I could legitimately make that argument that the record does show and as Judge Agee just pointed out usually you might want to stipulate to the drug amounts but Mr. Anderson as soon as he was aware of these additional drug amounts he started writing the court because he couldn't he didn't seem to believe that his attorney was acting on his behalf and this his guilty plea hearing was continued once his sentencing hearing was continued once and the reason that those two things were continued is because of Mr. Anderson's confusion and objection to these drug weights and when the first sentencing hearing occurred the his counsel told the court yes I can get those objections regarding this drug weight on file today and and those objections were still never filed. Okay can I ask you what what what is the remedy that you wish? You want us to remand for resentencing if we find a breach of the plea? Is that what you want? We would like to for his case to be remanded without the use of those additional drug amounts. Well or should we remand and they can he can strike a plea agreement with the government or not and otherwise go to trial that you be satisfied with that? Yes your honor we'd be satisfied with that as well. On all the counts of the indictment? Yes that's correct. And any additional counts that might be added? That's correct that's why his he specifically would ask for it to be remanded without the use of those drug counts. Santabella gives the option of either one but I believe. Because that would be specific performance in your view? They had agreed to okay. Yeah I mean of course the court would have to find it there was a breach of the Covenant of Good Faith and Fair Dealing and then at Mr. Anderson's request he would ask for it to be remanded back just to be resented and I know that was the in the recent Edgell case that was the specific performance remedy was requested and Mr. Anderson's request for that and I don't have anything to add. I think we understand your position you have some rebuttal Tom. Thank you. Ms. Richardson I understand that Mr. Witherspoon wrote this brief right? Yes your honor. And he was the United States Attorney that was involved in this case right? Yes your honor. And but he's not here in the courtroom today? That is correct your honor. And is there a reason for that? Your honor I have consulted with Mr. Witherspoon on this case that there's no particular reason why he's not in this courtroom today. Well is this a normal practice in your office what he did here? Your honor first is the government's position that the government did not breach this plea agreement. I understand that I'm asking you a factual question. Is this a normal practice? Your honor if I may ask a clarifying question when you say is this a normal practice are you referring to the accusation that the government did not turn over proper statements prior to the date of the plea agreement? That the government knew that there was a large amount of related activity it knew about it and it entered a plea agreement not referencing that. Is that the usual practice in your office? No your honor that is not the usual practice in our office. Is it your main do you maintain that didn't happen here? Yes your honor it is our contention. Well then I think that maybe it happened here. Okay and if it did happen would that be error? No your honor. With the plea agreement because it seems to me since you don't have we have to take the record that they said unless Mr. Witherspoon would prepare to file an affidavit or you come to court and tell us that but apparently he's not and I didn't read his brief is saying that either. I thought his brief really accepted the fact that he knew about this for these other charges but did not relate them that he was going to pursue them. Your honor in my reading of his briefing and speaking with Mr. Witherspoon it seemed that he did suggest that it was possible that the plea was entered before those proper statements were turned over. However in preparing for this argument in looking at our discovery log we I discovered that we did turn over two out of three of these proper statements before the date of the entry of the plea. Additionally your honor I would point the court to the judicial appendix where the defendant himself at judicial appendix page 223 states that you turned over two proffers to I forget the defendant's name here. Mr. Anderson. Mr. Yes your honor. And where can we find that? Your honor that is not in the record that is only something that I discovered in preparing for this hearing. However what we can find. But is it in some record somewhere? Yes your honor it's in our discovery log. Well that's not so the district court didn't know that it's not in the record for the district court is that right? Your honor this issue wasn't raised before the district court there was no this is the first time the breach has been raised here on appeal. So that issue never came up in the district court and I would also point the court's attention to Mr. Anderson's own statement and in the fourth letter he wrote the court he states I felt like I had to take a plea because he referring to his attorney came with the statement from Jarvis Kraft which again provides evidence in the record that this defendant Mr. Anderson had in fact received these proper statements before the date of his plea. No I don't know that it does because he could be talking about when he ultimately went to court. I mean I read that too but I wasn't sure that that I must say I had a whole different I thought that the government said yes this is what happened but it's okay but that's you're telling us that's not what happened. No your honor as I said I agree with you in reading the letter and suggested that we were going along with his accusation that we failed to turn things over and I would agree with you the majority of our briefing is assuming arguendo that we failed to turn these things over before the date of the plea but as I said when we dove into this in preparation for today and pulled the discovery log we found that two of these three statements were in fact turned over. And when you say two of these three statements what do you mean? To clarify your honor both Mr. Kraft and Mr. Todd gave proper statements but Mr. Todd was a immediately initially arrested and gave a a non-specific debriefing where he mentions Mr. Anderson. His proper statement which is the one that is reflected in the PSR that is the more detailed statement so there's one statement from Mr. Kraft two statements from Mr. Todd. The first of Mr. Kraft's statements were turned over before the date of the plea. Mr. Todd's proper statement was not turned over until after the plea. Your honor it's the government's position that even assuming that the government failed to turn these proffers over until after the date of the plea which we contend we did in fact turn over two out of three but even assuming that... I'm sorry just to go back to the two out of three so you so you your contention now is that you turned over one of the detailed proffer statements and then just one that would not have been of much use. So you were kind of halfway there in terms of disclosure. Yes your honor. Okay. Yes your honor but even assuming that we failed to turn over anything prior to the date of the plea prior to the date of the entry of... Why would the government be wanting to make I you know that you know the old thing that when justice is done the government wins. Why would the government want to pursue a claim saying even if we acted in an underhanded way we can get away with it. Your honor I appreciate your question and it's not our contention that we acted in an underhanded way. But no no no even assuming so we're going to the even assuming. Yes your honor even assuming we failed to turn over the proffer statements before the date of the plea. I my argument is that that would not be underhanded. In this case there was no deadline on when when Mr. Anderson had to enter that plea agreement. I mean it was entirely within his defense counsel's decision as to when to enter the plea agreement whether to wait wait for additional discovery. And again your honor the record reflects that Mr. Anderson knew that there were additional proffer statements out there. Even in his first letter to the court Mr. Anderson says my lawyer told me more than once they will prove this bias to unknown people. So even taking that on its face let's assume Mr. Anderson only had a vague inkling that there was additional drug weight that may be added to him. Again that is that is knowledge and understanding that there are additional things out here that may be added and I can wait until the government produces those in discovery or I can plead now. You know what strikes me is that Mr. Anderson is sort of laying his life out there. He is writing things that are on the record. The government is putting things in a closet somewhere only known to the government. It's just a very and who has more resources Mr. Anderson or the United States government? Certainly the government your honor. The government's position if the government had done this intentionally and I understand this is hypothetically but it's got these statements from Kraft and Todd and it actually makes the decision let's not hand them over let's not give them to probation yet let's not tell the Would that be a valid plea agreement? No your honor I believe I believe going back to Miss Alvaro's point regardless of how a plea agreement is made there needs to be some meeting of the mind. So we have a real factual question at the bottom of this case whether what I just outlined is what happened or not. Because you concede that if that happened it wouldn't be a valid plea agreement. Your honor if the government was acting in bad faith and in intentionally holding that would be a different set of facts. Bad faith is ugly but just like they've got the statements they don't want to hand them over they think they can get the guy to sign this plea agreement and they'd rather not have to pin themselves down so they hang on to the statements until after he signs the agreement. Is that a valid agreement? My answer is no your honor I believe that is acting in bad faith however the facts that I... Does that contradict your briefing in this case? Your honor I was just about to try and draw a line of demarcation. What I'm arguing is even if we fail to turn over the proper statements in this case unintentionally we weren't acting in bad faith it's simply let's say there was a processing issue in our office and it just took a while for those proper statements to get out. Even under those circumstances your honor this plea agreement would be valid and we would not be acting in that bad faith. That is what we don't agree but we don't know what happened. Your honor I believe we have a suggestion of what happened based on the letters written by Mr. Anderson. Okay so you think you could win if a prior fact determined what happened? Yes your honor. Right well you might be right. Your honor to Judge Agee's point as per our briefing our government failed to turn these proper statements over even under that assumption there is no requirement and there the appellant has cited no case law which requires the government to identify and disclose all possible relevant conduct prior to the date of the prior to the date of an injury of a plea. Additionally the guidelines... Well that I mean it seems like to me you've just contradicted your prior answers because if I thought you said if we knew about these for whatever reason we didn't turn them over that's a bad faith action and then your briefing and what you've said now is that well it's not required we don't we're not this is not something that there's an obligation for us to do. Your honor the distinction I'm making is whether there is if there were some suggestion that there was in fact bad faith the government had these proper statements we knew we were going to use them and then we went in and made this agreement. Your honor I think Miss Alvaro's argument would be somewhat different. My briefing and my argument here today is consistent whether we process the proffers too late and they didn't go out until after the plea or whether we did in fact turn them over in both cases the government is still acting in good faith. But if the government had intentionally not turned them over in a timely manner before the plea agreement you agree that their plea agreement would be invalid. That's what you said just five minutes ago. No your honor that I only. Intentionally in bad faith whatever you want to call it. I said I'm not assuming any like bad faith just intentionally they just decided why should we have to turn all this stuff over we'd rather see if we can get them to sign the plea agreement as it stands we don't feel like getting into a big thing about stipulated sentencing recommendations let's see if we can get a signature on this one first and you said that's an invalid agreement. Your honor let me let me clarify my point I believe the case law the case law suggests that if we intentionally or in bad faith if we're if we're talking about the breach of the plea agreement we intentionally or in bad faith refused to turn something over. Nobody asked you didn't refuse you just didn't turn it over. Yes your honor in that scenario the case law suggests that we would there would be no breach as there is no obligation incumbent on us to turn over all relevant conduct prior to the date of the entry of a plea agreement and your honor I recognize that that is a somewhat a different position from what I articulated a few moments ago. I believe my my inclination in when you when you suggest that the government would operate in bad faith. I was very clear I said I'm not assuming bad faith I mean I'd like to read this back I said not bad faith that's an ugly term. Yes your honor. All I'm saying is they you said that's an invalid agreement. And I wrote it down you said it. You you do do not think that now five minutes later? Your honor what I think is in trying to respond to the appellant's point about the fairness of the dealing what I said or what I rather what I meant to say is if the appellant were to argue the government acted in bad faith they that would be a different claim as to whether we entered into the same contract this meeting of the minds. Well I think the government and I think the defendant is arguing that. And your honor that the factual. You don't think they're right and we we've got that yes we got it that you don't think that the government did act in bad faith or that they just for their own reasons decided no they're not going to be turning this over. You don't think that happened? Correct. But if it did happen you said that there would be an invalid plea agreement and don't you stand by that? Is the United States really going to make the argument to the contrary? Your honor the argument that the United States is making is if we intentionally fail to turn something over that is usually something that we would want to remedy but in terms of what the law requires does not require us to turn over proper statements or any statements related to relevant conduct prior to the date of entry of a plea. As I was saying the guidelines even provide additional guidance on that. At 6B1.2 the guidelines state prosecutors are encouraged encouraged to turn over all information as it relates to relevant conduct. That same guideline provision goes on to state that is by no means to add an additional or to confer any rights upon a defendant not otherwise recognizing the law. Is it possible that the government decided not to hand this over because it's not relevant conduct anyway? I mean can you explain to me your theory for why these the Kraft and Todd proffers are the same course of conduct? Yes your honor. In addressing how the same course of conduct with respect to relevant conduct I believe the Mullins case is helpful in giving what it calls significant elements for how a conduct may relate to the the offense of conviction. Here your honor in those three elements similarity, regularity, and temporal proximity we can see that there is no regularity in those two proffer statements offered by Mr. Todd. There's no temporal proximity. Your There is no temporal proximity with respect to Mr. Todd's statement. However for Mr. Kraft's statement he outlines conduct occurring over the entirety of 2015. But he doesn't suggest it happened every day. I mean he gives no dates so how are we how are we supposed to know if there was temporal proximity? Your honor I am suggesting that there would be temporal proximity because of the overlap of Mr. Todd's piece speaking about 2015 in the offense of conviction that kind of happening in January of 2015. Okay let's agree to disagree on that so tell me about why they are similar. Your honor they are similar in that all three involve the supplying of crack cocaine and specifically your honor as the issue was waived at the district court level we didn't get into further specifics about what was in the PSR. The PSR does describe the location for these incidents and again if the issue weren't waived this is something we would have pointed out during the during the sentencing which is these locations are all within a three block radius of each other. Is that in your briefs? Your honor the location is in the PSR. I know is this an argument you made in your brief? No your honor or rather we made the argument about there being a waiver. Yes yes but there's nothing about location in the brief. Correct. Right as I read the government's brief and this is my concern. Yes your honor. The government's brief says it's similar because it's all about drugs and that can't possibly be the rule right? Agreed your honor. Okay. And I believe that Mullins. So the brief is wrong we can put to one side the arguments in the brief and you have a different argument you want to present now. Your honor I just want to add an additional element to that similarity so yes they're all dealing with drugs but they're specifically dealing with crack cocaine and your honor the locations as identified in that PSR if you triangulate them they are all within the same small community in Columbia the Pinehurst community in a three block radius and so that that that third factor of similarity does have a stronger presence here. Yeah. In the absence of regularity. Okay. You don't have to say anything more. You don't have to use up all your time. There's no requirement. I if your honor would like me to talk about the ineffective assistance of counsel claim I can move there or I can yield remaining time. It's up to you. I will yield my time. Thank you. Thank you. Thank you your honors. Just briefly. So have you argued anywhere that the government acted in bad faith? No your honor. Simply argued that they acted intentionally. I didn't I did not use the term intentionally just that they did not disclose the information that they had and there was nothing in the record that indicated they had turned over this information prior to Mr. Anderson's plea and in fact in the brief I read the brief the same way your honors did it specifically says after the plea Anderson and his attorney were informed of additional drug weights that would be attributed to Anderson as relevant conduct. That's on page four of the government's brief and Mr. Anderson. So at the final sentencing hearing am I correct that Mr. Anderson told the court that he had when it was all done that he had no objections to the PSR? He did end up acquiescing to no objections to the PSR. I believe in maybe in the beginning of the sentencing hearing he still was raising the same objections. He took a break. The court was urging them to move forward because there have been many delays in this case and he had a break with his attorney and came back on agree to everything. And just to reiterate that point there's a letter on file from Mr. Anderson in November which was after the plea agreement was entered on the docket sheet and he says then my attorney comes to me it's a month after and he tells me that there's some paperwork saying Jarvis said he was telling me 125 grams of cocaine and 175 of cooked crack. And then there's another letter I believe the government might have referenced it. I think it's the Joint Appendix 232-23 where he also references again that look it's January 2017 and I found out about Mr. Todd's statement attributing drug to me. So I don't have the log of what the government turned over to Mr. Anderson's prior counsel. That may be go to his ineffective assistance claim which this court may decide. You can decide or you may decide that that's a 2255 matter but in any event that Mr. Anderson's position is that he was not aware of that drug weight prior to entering the plea agreement and our position is based on the covenant of good faith and fair dealing. No accusations of bad faith. If there are no further questions I'll yield my time. Thank you. We will come down say hello to the lawyers and then go directly to our last case.
judges: Diana Gribbon Motz, G. Steven Agee, Pamela A. Harris